EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Reliable Financial Services y Universal Insurance Company<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br><br>Peticionario | Certiorari<br><br>2017 TSPR 186<br><br>198 DPR ____ |

Número del Caso: CC-2017-228

Fecha: 1 de diciembre de 2017

Región Judicial de Carolina

Oficina del Procurador General:

      Lcdo. Luis Román Negrón
      Procurador General

      Lcdo. Isaías Sánchez Báez
      Subprocurador General

      Lcda. Carmen E. Riera Cintrón
      Procuradora General Auxiliar

Materia: Resolución del Tribunal con Voto Particular de Conformidad y Voto Particular Disidente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Reliable Financial Services y
Universal Insurance Company

Recurridos

        v.

                                CC-2017-0228

Estado Libre Asociado de
Puerto Rico y otros

      Peticionario

RESOLUCIÓN

En San Juan, Puerto Rico, a 1 de diciembre de 2017.

Examinado el <u>Aviso de paralización de los procedimientos por virtud de la petición presentada por el gobierno de Puerto Rico bajo el Título III de PROMESA y moción informativa sobre procedimiento para presentar moción en solicitud de relevo de la paralización automática</u>, que presentó la parte peticionaria, se ordena el archivo administrativo del caso hasta tanto una de las partes nos certifique que se ha levantado la paralización, ya sea por la conclusión del procedimiento de quiebras o mediante una solicitud a esos efectos, según lo dispuesto en la Sección 362(d) del Código de Quiebras, 11 USCA 362(d).

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres emitió un Voto particular de conformidad al cual se unió el Juez Asociado señor Feliberti Cintrón. La Jueza Presidenta Oronoz Rodríguez emitió un Voto particular disidente al cual se unió la Juez Asociada señora Rodríguez Rodríguez. Los Jueces Asociados señores Estrella Martínez y Colón Pérez proveerían no ha lugar a la moción.

                        Juan Ernesto Dávila Rivera
                       Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Reliable Financial Services y
Universal Insurance Company

     Recurridos

       v.                CC-2017-0228

Estado Libre Asociado de
Puerto Rico y otros

     Peticionarios

Voto particular de conformidad emitido por el Juez Asociado señor MARTÍNEZ TORRES al cual se unió el Juez Asociado señor FELIBERTI CINTRÓN.

En San Juan, Puerto Rico, a 1 de diciembre de 2017.

Coincido con la decisión de este Tribunal de archivar este caso administrativamente hasta que las partes notifiquen que el procedimiento de quiebras ha concluido. Como veremos a continuación, la legislación federal aplicable nos prohíbe intervenir en los casos de confiscación que hayan comenzado antes de que el gobierno de Puerto Rico presentara la petición de quiebra, porque se trata de una reclamación monetaria contra el gobierno de Puerto Rico. Estas quedaron paralizadas automáticamente al presentarse la petición de quiebra.

I

El 30 de junio de 2014, Reliable Financial y Universal Insurance Company entablaron una demanda contra el gobierno de Puerto Rico impugnando la confiscación de un vehículo. Luego de seguir el trámite ordinario, el caso llegó a este foro y decidimos expedir el certiorari con el propósito de resolver las controversias que nos fueron planteadas. Entonces, el 5 de septiembre de 2017, el Procurador General compareció ante este foro y nos informó que el caso había quedado paralizado debido a la petición de quiebra que había presentado el Gobierno de Puerto Rico el 5 de mayo de 2017.

Como es conocido, el Congreso de Estados Unidos, en virtud del poder que le otorga la Cláusula Territorial de la Constitución de Estados Unidos, Art. IV, Sec.3, Const. EE. UU., LPRA, Tomo 1, aprobó el Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA), 48 USCA sec. 2101 et seq. El propósito de esta legislación fue establecer el proceso de reestructuración de la deuda de Puerto Rico. En aras de cumplir con este propósito, el Título III de PROMESA autoriza y establece el procedimiento que debe seguir el gobierno de Puerto Rico para presentar una petición de quiebra. Es por esto que el Título III de PROMESA incorporó las secciones 362 y 922 de la Ley de Quiebras federal, 11 USCA secs. 362 y 922, las cuales paralizan automáticamente los pleitos que se estén

llevando contra el deudor al momento de radicar la petición de quiebra. 48 USCA sec. 2161.

La paralización automática del inciso (a) de la Sección 362, 11 USCA sec. 362(a), aplica a cualquier petición de quiebra. El propósito de esta es proteger al deudor de las reclamaciones de los acreedores y, a su vez, proteger a estos últimos frente a otros acreedores. Collier on Bankruptcy, sec. 362.03 (Alan N. Resnick & Henry H. Sommer eds., 16th ed.) Por otro lado, la Sección 922, supra, forma parte del Capítulo 9 de la Ley General de Quiebras, el cual trata sobre peticiones de quiebras municipales, y también paraliza automáticamente las reclamaciones que se estén llevando contra la municipalidad que haya presentado una petición de quiebra. Collier, supra, sec. 922.01. Asimismo, el propio texto del Título III de PROMESA, 48 USCA sec. 2164, indica que "[e]l inicio de un caso bajo este título constituye una orden de suspensión". (traducción oficial.)

Cabe destacar que una vez se presenta la petición de quiebra, los tribunales quedan privados de jurisdicción automáticamente, sin necesidad de ser avisados, y no pueden continuar atendiendo los casos en donde se esté reclamando contra el deudor que radicó la petición de quiebra. Marrero Rosado v. Marrero Rosado, 178 DPR 476, 490-491 (2010). Asimismo, la Sección 362(b), 11 USCA sec. 362(b), menciona una serie de excepciones a la paralización automática. Por último, la sección 362(d) de

la Ley de Quiebras federal, 48 USCA sec. 362(d), establece el procedimiento que debe seguir una parte interesada que entienda que debe levantarse la paralización automática en su caso.

La controversia que tenemos hoy ante nuestra consideración está paralizada claramente. Como ya mencionamos, el caso trata sobre la confiscación de un vehículo. Se considera que hay una reclamación monetaria, ya que el vehículo pasó a ser parte del patrimonio del Estado desde que se confiscó. Solo dejaría de ser propiedad del Estado si prevaleciera la impugnación de la confiscación. De prevalecer la postura de Reliable Financial Services y Universal Insurance Company, el Estado tendría que devolver el vehículo o su equivalente en dinero. Como se solicita que se sustraigan bienes que ya están en el patrimonio del Estado, este caso está paralizado automáticamente y no nos corresponde determinar lo contrario. Como ya mencionamos, las partes tienen la opción de presentar una moción en el Tribunal de Quiebras en la cual soliciten que se levante la paralización automática.

Como correctamente señala el voto particular disidente, los tribunales estatales tienen la facultad inicial de determinar si un caso está paralizado. Voto particular disidente, pág.3. Véase también, Lacourt Martínez et al. v. Jta. Lib. et al. 2017 TSPR 144, 198 DPR ___ (2017); In re Mid-City Parking, Inc., 332 B.R.

798, 803 (N.D. Ill. 2005). Sin embargo, esta facultad no es absoluta y está delimitada por el texto de la ley. La Cláusula de Supremacía de la Constitución de Estados Unidos ordena a los jueces estatales a seguir lo establecido en las leyes federales, sin excepción alguna. Art. VI, Const. EE. UU., LPRA, Tomo 1. Asimismo, PROMESA, 48 USCA sec. 2103, establece que las disposiciones de esa ley están por encima de las leyes locales o de cualquier ley que sea inconsistente con lo que ella dispone. Esto también obliga a los jueces locales a resolver conforme a lo que ella establece. En fin, el sistema constitucional en el que vivimos nos obliga a resolver cónsono con lo que establecen las leyes y no a base de columnas de periódicos, que, si bien aportan a la discusión de temas de actualidad, no constituyen fuentes primarias de Derecho ni tienen supremacía contra la ley federal.

RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Reliable Financial Services y
Universal Insurance Company

      Recurridos

                                 Certiorari

     v.                CC-2017-0228

Estado Libre Asociado de
Puerto Rico

      Peticionario

Voto particular disidente emitido por la Jueza Presidenta ORONOZ RODRÍGUEZ, al cual se unió la Juez Asociada señora RODRÍGUEZ RODRÍGUEZ

En San Juan, Puerto Rico, a 1 de diciembre de 2017.

La restructuración judicial de la deuda pública de Puerto Rico supuso la paralización de los pleitos radicados contra el Estado Libre Asociado de Puerto Rico (ELA). Esto, pues, la sección 301(a) del Título III del Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA) incorporó las secciones 362 y 922 del Código Federal de Quiebras en torno a paralizaciones automáticas de pleitos contra el deudor y su propiedad. 48 U.S.C. sec. 2161(a). Ahora bien, en Rafael Lacourt Martínez v. Junta de Libertad Bajo Palabra, 2017 TSPR 144, 198 DPR ___ (2017) y en Laboratorio Clínico Irizarry v. Departamento de Salud, 2017 TSPR 145, 198 DPR ___

(2017), rehusamos paralizar pleitos que no involucren una reclamación monetaria contra el ELA. De este modo, rechazamos una interpretación mecánica de las disposiciones de PROMESA y vindicamos el rol de nuestros tribunales en salvaguardar los derechos de sus ciudadanos.

En esta ocasión, la controversia ante nosotros es si procede la paralización automática en un pleito de impugnación de confiscación. En Rafael Lacourt Martínez v. Junta de Libertad Bajo Palabra, supra, y en Laboratorio Clínico Irizarry v. Departamento de Salud, supra, no atendimos directamente este asunto. Sin embargo, la Mayoría que hoy concede la paralización descansa en que este pleito, a diferencia de aquéllos, sí contiene una reclamación monetaria. Por mi parte, estimo que los fines de la paralización automática y la naturaleza de los pleitos de impugnación de confiscación exigen que no se paralice el pleito ante nuestra consideración.

Según indicado, PROMESA incorporó las secciones 362 y 922 del Código Federal de Quiebras, las cuales reconocen la paralización automática de numerosas reclamaciones contra el deudor. 48 U.S.C. sec. 2161(a). Este es uno de los elementos esenciales del procedimiento de quiebras. Su objetivo principal es liberar al deudor de presiones financieras mientras dure el proceso. Rafael Lacourt Martínez v. Junta de Libertad Bajo Palabra, supra, pág. 4. De este modo, el deudor tendrá un respiro de las acciones judiciales de sus acreedores mientras se dilucida la restructuración de su deuda. Véase 3 Collier on

Bankruptcy, sec. 362.03 esc. 6 ("It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions").

Tanto los tribunales federales como los estatales tenemos la facultad inicial de interpretar la paralización y su aplicabilidad a los casos. Rafael Lacourt Martínez v. Junta de Libertad Bajo Palabra, supra, pág. 5; véase In Mid-City Parking, Inc., 332 B.R. 798, 803 (N.D. Ill. 2005). Como parte de ese ejercicio, considero que los tribunales debemos evaluar tanto la naturaleza de la acción como el efecto que tendría paralizarla. Más aún en un escenario bajo PROMESA, pues al tratarse de una restructuración gubernamental la cantidad de pleitos sujetos a la paralización es significativamente mayor.

La confiscación es el acto mediante el cual el Estado priva a una persona de su propiedad porque presuntamente fue utilizada en la comisión de ciertos delitos. Cooperativa de Seguros Múltiples v. Estado Libre Asociado, 196 DPR 639 (2016). Aunque se dirige "contra la cosa misma", mediante la confiscación el Estado interviene con la propiedad de los ciudadanos. Por esta razón, la Ley de Confiscaciones limita el poder confiscatorio del Estado y provee a las personas afectadas un procedimiento civil para impugnarlas. Ese proceso que establece la ley concretiza unas garantías mínimas de índole constitucional, pues es conocido que el Estado no puede interferir de forma irrestricta con la propiedad de sus

ciudadanos. Por consiguiente, mediante esta acción los ciudadanos vindican sus derechos propietarios y los tribunales evalúan si el Estado cumplió con las normas constitucionales y estatuarias aplicables.

En Rafael Lacourt Martínez v. Junta de Libertad Bajo Palabra, supra, y en Laboratorio Clínico Irizarry v. Departamento de Salud, supra, no resolvimos si procede paralizar los pleitos de confiscaciones. Ahora bien, razonamos que los pleitos allí en controversia no se debían paralizar porque no involucraban una reclamación monetaria. De forma análoga, considero que un caso de impugnación de confiscación no debe paralizarse, pues no se trata de una reclamación monetaria convencional. Veamos.

En primer lugar, en estos casos lo que se está adjudicando es si la confiscación fue legal. Si no lo fue, estimo que la propiedad confiscada nunca formó parte del caudal del Estado. En ese sentido, de prosperar en su acción, la parte demandante meramente retoma la propiedad que legalmente le pertenece o, si fue dispuesta, un aproximado de su valor. Reconozco que el objetivo principal de la paralización es librar al deudor de presiones financieras. No obstante, ese propósito no puede tener el alcance de paralizar pleitos donde se persigue que se devuelva algo que el ELA nunca debió tomar para sí. Resulta problemático pensar que la acción de un ciudadano para **recuperar su propiedad** se tiene que paralizar porque "afecta" las finanzas del ELA. En resumen, estimo que

estos pleitos en poco o en nada afectan el proceso de quiebras.

En segundo lugar, incluso en aquellos casos donde la propiedad fue vendida, la parte es acreedora a una compensación que proviene del Fondo Especial de Confiscaciones. Artículo 6 de la Ley Núm. 119-2011, 34 LPRA sec. 1724c. Es decir, los recaudos generales del ELA no se ven afectadas, sino solo aquellos que provienen de las confiscaciones. La facultad del ELA de confiscar la propiedad viene acompañada de responsabilidades. Por lo tanto, si el ELA obtiene dinero de una confiscación ilegal es razonable que compense oportunamente a la persona por el daño ocasionado.

Finalmente, cabe mencionar otros problemas que presenta paralizar estos pleitos. La paralización hace más probable que -en lugar de meramente devolver la propiedad ocupada- el Estado tenga que pagar el importe de la tasación al momento de la ocupación o la cantidad de dinero por la cual se haya vendido, más el interés legal.[1] Artículo 19 de la Ley Núm. 119-2011, 34 LPRA sec. 1724p. En cambio, de continuar el pleito, la naturaleza sumaria del proceso de impugnación permite que la propiedad confiscada se devuelva, evitando así consecuencias económicas negativas y severas para muchas partes, incluyendo el Estado.

---

[1] Cabe mencionar que podría argumentarse que mientras más se dilate el proceso de quiebras mayor será la cantidad que tendrá que pagar el Estado en concepto de interés legal.

Recientemente el Profesor Efrén Rivera Ramos cuestionó la tendencia de paralizar pleitos que no tenían que ver con asuntos relacionados con la deuda.[2] Entre ellos, mencionó expresamente la impugnación de confiscaciones de vehículos. Más adelante señaló que

> [l]a concesión automática por parte de los jueces de las paralizaciones solicitadas suscitaba cuestiones de gran envergadura para el funcionamiento de un sistema basado en la posibilidad de vindicar derechos a través de los tribunales y de garantizar la existencia del imperio de la ley o "rule of law", como le llaman los angloparlantes. Minaba también el principio de rendición de cuentas de los gobernantes.

¿Habrá algún pleito donde resulte más importante la vindicación de derechos y la rendición de cuentas que cuando el Estado priva a una persona de su propiedad?

En fin, por los fundamentos antes expuestos, estoy en desacuerdo con conceder la paralización solicitada. Uno de nuestros roles constitucionales más básicos es velar por el cumplimiento de nuestras garantías constitucionales. Dicho rol no se cumple archivando administrativamente los casos y atrasando indefinidamente la posibilidad de vindicar derechos constitucionales tan importantes.

Maite D. Oronoz Rodríguez
Jueza Presidenta

---

[2] Efrén Rivera Ramos, Supremo: No procede detener pleitos, El Nuevo Día, 15 de agosto de 2017, https://www.elnuevodia.com/opinion/columnas/supremonoprocededetenerple itos-columna-2349057/.