EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Juan Vera González por sí y en representación del menor J.X.V.L.<br><br>Peticionarios<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico; Departamento de Educación<br><br>Recurridos | Certiorari<br><br>2018 TSPR 43<br><br>199 ____ |

Número del Caso: AC-2018-20

Fecha: 19 de marzo de 2018

Tribunal de Apelaciones:

      Región Judicial de San Juan

Abogado de la parte peticionaria:

      Lcdo. Osvaldo Burgos Pérez

Oficina del Procurador General:

      Lcdo. Luis Román Negrón
      Procurador General

      Lcda. Stephanie Ortiz Suárez
      Procuradora General Auxiliar

Materia: Resolución del Tribunal con Voto particular de conformidad y Votos Particulares Disidentes.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan Vera González por sí y en representación del menor J.X.V.L.

      Peticionarios

         v.

Estado Libre Asociado de Puerto Rico; Departamento de Educación

      Recurridos

AC-2018-0020

RESOLUCIÓN

En San Juan, Puerto Rico, a 19 de marzo de 2018.

Considerado el recurso como una solicitud de <u>certiorari</u>, se provee no ha lugar.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres emitió un voto particular de Conformidad al cual se unieron la Jueza Asociada señora Pabón Charneco y los Jueces Asociados Señor Kolthoff Caraballo y señor Feliberti Cintrón. El Juez Asociado señor Estrella Martínez emitió un Voto Particular Disidente. El Juez Asociado señor Colón Pérez emitió un Voto Particular Disidente al cual se unieron la Jueza Presidenta Oronoz Rodríguez, la Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Estrella Martínez.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan Vera González por sí y en representación del menor J.X.V.L.

      Peticionarios

v.

Estado Libre Asociado de Puerto Rico; Departamento de Educación

      Recurridos

AC-2018-0020

Voto Particular de Conformidad emitido por el Juez Asociado señor MARTÍNEZ TORRES al cual se unieron la Juez Asociada señora PABÓN CHARNECO y los Jueces Asociados señor KOLTHOFF CARABALLO y señor FELIBERTI CINTRÓN.

En San Juan, Puerto Rico, a 19 de marzo de 2018.

Estoy conforme con que se emita una <u>resolución</u> que provea no ha lugar al recurso de <u>certiorari</u> que tenemos ante nuestra consideración. Este caso trata sobre una reclamación de honorarios que se presentó al amparo del <u>Individuals with Disabilities Education Act</u> (<u>IDEA</u>), <u>infra</u>. Como veremos a continuación, basta leer y entender los conceptos básicos de quiebras y la <u>Puerto Rico Oversight, Management, and Economic Stability Act</u> (PROMESA), <u>infra</u>, para concluir que el caso está paralizado y que tiene que archivarse administrativamente hasta que el tribunal federal, que es el foro con jurisdicción, levante la paralización.

I

Con el fin de lidiar con la situación económica de Puerto Rico, el Congreso de Estados Unidos aprobó PROMESA, 48 USCA sec. 2101 et seq. La aprobación de esta legislación ocurrió en virtud del poder que le otorga la Cláusula Territorial de la Constitución de Estados Unidos, Const. EE. UU., Art. IV, Sec. 3, al Congreso sobre el gobierno de los territorios.

El Título III de PROMESA establece el procedimiento para que el gobierno de Puerto Rico pueda presentar una petición de quiebra. Por esto, incorporó ciertas disposiciones de la Ley de Quiebras federal. 48 USCA sec. 2161. La legislación de Quiebras federal se aprobó con el propósito de ofrecer al deudor una herramienta que le brinde solución a sus problemas financieros a largo plazo y le permita comenzar de nuevo, entre otras cosas. Puerto Rico v. Franklin California Tax-Free Trust, 136 S. Ct 1938, 1950 (2016); Marrama v. Citizens Bank of Mass., 549 US 365, 367 (2007). Entre las disposiciones de la ley de quiebras que se incorporaron a PROMESA se encuentran las relativas a la paralización automática, 11 USCA. sec. 362 y 922, y el descargue de las obligaciones (discharge), 11 USCA sec. 524(a).

La paralización automática es una de las protecciones básicas que le ofrece el procedimiento de quiebras al deudor. Midlantic Nat'l Bank v. New Jersey Dep't of Envtl.

Prot., 474 US 494, 503 (1986). Tiene como propósito proteger al deudor de reclamaciones del acreedor y, además, proteger a los acreedores de reclamaciones de otros acreedores. Collier on Bankruptcy, sec. 362.03 (Alan N. Resnick & Henry H. Sommer eds., 16th ed.). Véase también Reliable Financial Services y Universal Insurance Company v. Estado Libre Asociado de Puerto Rico y otros, supra. En otras palabras, busca preservar el caudal del deudor para que se pueda llevar un proceso ordenado. Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Prot., supra, pág. 503.

El efecto de la paralización automática es detener los pleitos que involucren reclamaciones monetarias y que se estén llevando contra el deudor al momento de radicar la petición de quiebra o aquellas que hayan podido comenzar antes de la presentación de la petición de quiebra. 11 USCA sec. 362(a). La paralización opera de forma automática en los pleitos, no importa la causa de la reclamación monetaria. Por lo tanto, los tribunales estatales quedan privados de jurisdicción automáticamente y no pueden continuar atendiendo los casos en los que exista una reclamación monetaria contra el deudor que presentó la petición de quiebra. Marrero Rosado v. Marrero Rosado, 178 DPR 476, 490-491 (2010); In re Jamo, 283 F.3d 392, 398 (1er Cir. 2002). Véase también Reliable Financial Services y Universal Insurance Company v. Estado Libre Asociado de

<u>Puerto Rico y otros</u>, 2017 TSPR 186, 198 DPR__ (2017) (voto de conformidad).

Por su parte, la Sec. 362(b) menciona una serie de excepciones a la paralización. 11 USCA 362(b). La paralización automática permanecerá hasta que culmine el proceso o hasta que el tribunal federal levante la paralización, de acuerdo al procedimiento establecido en la Sec. 362(d) de la Ley de Quiebras federal, 11 USCA sec. 362(d). <u>In re Jamo</u>, <u>supra</u>, pág. 398. Asimismo, el propio texto del Título III de PROMESA, 48 USCA sec. 2164, indica que "[e]l inicio de un caso bajo este título constituye una orden de suspensión". (traducción oficial.). De lo contrario, el caudal del deudor disminuiría antes de que el tribunal de quiebras evalúe la condición económica del deudor y su plan de pago. Todo esto derrotaría el propósito de proveer un proceso ordenado y uniforme de reorganización de las finanzas del deudor.

Como mencionamos, la controversia que tenemos ante nuestra consideración es sobre el cobro de honorarios de abogados contra el gobierno, al amparo de la ley federal <u>IDEA</u>, 20 USCS sec. 1401 <u>et seq.</u> El cobro de honorarios se considera una reclamación monetaria, ya que de no prevalecer la postura del gobierno, el dinero para pagarlos saldría del patrimonio del Estado. Del propio texto de PROMESA y de la Ley de Quiebras federal no surge una excepción a la paralización automática que aplique a una

reclamación monetaria contra el gobierno por el pago de honorarios de abogados al amparo de IDEA. Por eso, este caso está paralizado.

II

Por otro lado, la Sec. 2161 de PROMESA, supra, incorporó la Sec. 524(a) de la Ley de Quiebras federal, supra, sobre el descargue de las obligaciones del deudor. El proceso de descargue es uno de los beneficios que tiene el deudor que se somete al proceso de quiebras y le permite al deudor comenzar de nuevo su vida financiera. Collier on Bankruptcy sec. 1.02, supra. El descargue de las obligaciones opera como un injunction que prohíbe al acreedor el cobro de las deudas al deudor. In re McLean, 794 F.3d 1313, 1321 (11mo Cir. 2015); In re Canning, 706 F. 3d 64, 70 (1er Cir. 2013). Collier on Bankruptcy sec. 524.02, supra.

Como podemos ver, la paralización y el descargue de las obligaciones del deudor son dos cosas distintas. La paralización ocurre automáticamente cuando se presenta la petición de quiebra contra cualquier reclamación monetaria que exista contra el deudor. En cambio, el descargue de una obligación del deudor es el fin último del proceso de quiebras y ocurre al final del mismo. Esto significa que la paralización automática cubre deudas que eventualmente pueden no ser descargadas. Véase In re Merchant, 958 F2.d 738 (6to Cir. 1992). Por eso, afirmar que la paralización automática no aplica, basado en la creencia de que una deuda

no será descargada eventualmente, es erróneo. Es el tribunal federal el único que puede decidir eventualmente cuáles deudas serán descargadas y cuáles no. De igual modo, ese es el único foro con jurisdicción para levantar la paralización automática.

El voto disidente utiliza la Sec. 304(h) de PROMESA, 48 USCA sec. 2164(h), como fundamento para concluir que el caso no está paralizado. Voto particular disidente, pág. 8. Eso es erróneo. En específico, esta sección indica:

> **(h) Public safety**
> This chapter may not be construed to permit **the discharge** of obligations arising under Federal police or regulatory laws, including laws relating to the environment, public health or safety, or territorial laws implementing such Federal legal provisions. This includes compliance obligations, requirements under consent decrees or judicial orders, and obligations to pay associated administrative, civil, or other penalties. (énfasis suplido). Sec. 304(h) de PROMESA, supra.

De la discusión anterior surge que el propósito de esta sección es evitar el descargue del cumplimiento de las obligaciones que imponen las leyes y reglamentos federales que incluyen las leyes relacionadas al medio ambiente, la salud o la seguridad pública. En otras palabras, esta sección persigue evitar que, con el pretexto de la quiebra, el estado evada su obligación de cumplir con las leyes y reglamentos federales que buscan garantizar la seguridad y bienestar del pueblo. Esta sección de PROMESA no constituye una excepción a la paralización automática de las

reclamaciones monetarias contra el Estado Libre Asociado de Puerto Rico. Tampoco tiene que ver con la controversia que tenemos ante nosotros.

El otro fundamento que utiliza el voto disidente para concluir que la controversia ante nuestra consideración no está paralizada es la Sec. 7 de Promesa, 48 USCA sec. 2106. Voto particular disidente, págs. 8-9. Esta dispone:

> Except as otherwise provided in this chapter, nothing in this chapter shall be construed as impairing or in any manner relieving a territorial government, or any territorial instrumentality thereof, from compliance with Federal laws or requirements or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory.

Esta sección se refiere a que la aprobación de PROMESA no releva al estado de su cumplimiento con las leyes relacionadas con la salud, seguridad y ambiente, por lo que tampoco tiene pertinencia a la controversia que tenemos ante nuestra consideración.

                                III

Como muy bien señala el voto disidente, los tribunales estatales están facultados para verificar inicialmente si el caso está paralizado. Voto particular disidente, pág. 7. Véase también, Lacourt Martínez et. al. v. Jta. Lib. et. al. 2017 TSPR 144, 198 DPR ___ (2017); In re Mid-City Parking, Inc., 332 B.R. 798, 803 (N.D. Ill. 2005). Sin embargo, no nos compete a nosotros ni a ningún tribunal estatal levantar la paralización automática en casos que

claramente están paralizados. Es de conocimiento básico que en la estructura de un gobierno federal, los tribunales federales tienen jurisdicción exclusiva para atender ciertos temas. La Constitución de Estados Unidos delegó en el Congreso la facultad de adoptar las leyes uniformes de quiebras en toda la nación. Const. EE. UU., Art. I, Sec. 8, por lo que ocupó el campo en esta materia. En virtud de esta disposición, el Congreso de los Estados Unidos creó un tribunal especializado en quiebras y le otorgó jurisdicción original y exclusiva para atender los casos de quiebras. 28 USCA 1334(a). En fin, el tribunal federal es el único foro con jurisdicción para levantar la paralización durante un proceso de quiebras.

Cabe destacar que el Tribunal de Distrito de Puerto Rico tuvo ante sí una controversia idéntica a la que tenemos aquí planteada y también determinó que está paralizada. Véase Beuchamp-Velázquez v. Department of Education of Puerto Rico, CV 3:17-01419-WGY, 2017 WL 4228047 (D. PR 2017). Sin embargo, el tribunal federal levantó la paralización automática luego de que las partes siguieron el procedimiento para solicitar que se levantara la paralización automática que dispone la Sec. 362(d) de la Ley de Quiebras federal, supra. Véase In re: The Financial Oversight and Management Board for Puerto Rico, as representative of The Commonwealth of Puerto Rico, et al., No. 17 BK 3283-LTS (Bankr. D. PR. Aug.22, 2017). No existe

duda de que el foro apelativo intermedio actuó correctamente al confirmar la determinación del Tribunal de Primera Instancia de que este caso ya está paralizado y que, por ende, debe ser archivado administrativamente. Como ya mencioné, las partes, de entender que el pleito no está paralizado, pueden acudir al tribunal federal para solicitar que se levante la paralización. La postura de la parte peticionaria es contraria a los conceptos legales básicos de la quiebra. Solo logra retrasar el proceso y opera en contra de la propia parte peticionaria. En lugar de gastar dinero, papel y tiempo en los tribunales locales, pudo haber comparecido a tiempo ante el único foro con jurisdicción: el tribunal federal.

Como los tribunales locales no tenemos jurisdicción para levantar la paralización, estamos facultados únicamente para hacer la determinación de falta de jurisdicción. Véase Pérez López y otros v. CFSE, 189 DPR 877, 883 (2013). Cualquier otra intervención nuestra en esta etapa sería nula, por lo que entiendo que no existe razón para expedir el certiorari.

RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan Vera González por sí
y en representación del
menor J.X.V.L.

   Peticionario

        v.                    AC-2018-0020     Apelación

Estado Libre Asociado de
Puerto Rico, *et al.*

   Recurrido

Voto particular disidente emitido por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 19 de marzo de 2018.

Por entender que el presente caso está exceptuado de la paralización automática de litigios provista en PROMESA, infra; que, además, este Tribunal posee jurisdicción concurrente para evaluar si un caso está sujeto a las excepciones de la referida paralización, y que, de la controversia estar exceptuada, estamos facultados para reconocerlo y aplicarlo, DISIENTO.

En consecuencia, me opongo al dictamen emitido por la Mayoría de este Tribunal, puesto que, como se demostrará a continuación, el presente litigio está exceptuado de la paralización automática.

**I**

En apretada síntesis, el caso ante nos versa sobre una reclamación de honorarios de abogados, al amparo de la Individuals with Disabilities Education Act (IDEA), 20 USC sec. 140 et seq. Esa reclamación surge a la luz de un procedimiento iniciado por el Sr. Juan Vera González (señor Vera González) y su esposa, en contra del Departamento de Educación por éste no haber brindado al hijo del matrimonio los servicios educativos especializados necesarios para mejorar el aprovechamiento académico del menor.

Una vez el señor Vera González entabló la demanda correspondiente para reclamar los honorarios de abogados, el Estado Libre Asociado de Puerto Rico presentó una moción ante el Tribunal de Primera Instancia en la cual sostuvo que el caso estaba paralizado en virtud del procedimiento de Título III ante el Tribunal de Quiebra, a tenor con la Puerto Rico Oversight Management, and Economic Stability Act (PROMESA), 48 USC sec. 2101 et seq. En su sentencia, el foro primario determinó que el litigio estaba paralizado, lo cual fue confirmado por el Tribunal de Apelaciones.

**II**

En ocasiones anteriores, en el contexto de reconocer las excepciones a la paralización automática de PROMESA, supra, he resaltado la importancia de que este Tribunal actúe de manera activa, con el fin de cumplir con su "deber ministerial de salvaguardar los derechos del Pueblo". Voto

particular disidente del Juez Asociado Señor Estrella Martínez en Narváez Cortés v. Estado Libre Asociado de Puerto Rico, et al., res. el 21 de febrero de 2018, 2018 TSPR 32. De igual modo, he añadido que la condición territorial de Puerto Rico no puede ser óbice para reconocer estas excepciones, por lo que "[a] la altura de estos tiempos, es imperativo actuar proactivamente y conforme a derecho". Voto particular disidente del Juez Asociado Señor Estrella Martínez en ELA v. El Ojo de Agua Development, Inc., res. el 2 de febrero de 2018, 2018 TSPR 12.

Lo anterior cobra mayor relevancia ante nuestra presente realidad histórica con la adopción de PROMESA, supra, y la implementación de su Título III. En éste, se creó un proceso particular de quiebra integrando expresamente varias secciones del Capítulo 11 del Código Quiebras, en especial, aquellas relacionadas con la paralización automática de litigios al presentarse una solicitud de quiebra. Véase, 48 USC 2161 y 11 USC 362 y 922. De modo general, este proceso establece una paralización automática en los litigios que se estén ventilando o se puedan ventilar contra el deudor. No obstante, esa misma sección establece varias instancias y supuestos en los cuales, bajo unos hechos en particular, un litigio podría estar exceptuado de la paralización automática. Es decir, la paralización no es absoluta y la precitada sección considera circunstancias en la cuales no aplica y que, por lo tanto, permite proseguir con el caso.

Así las cosas, resulta importante recalcar que este Tribunal posee jurisdicción concurrente para evaluar si, en efecto, un pleito está paralizado en virtud de PROMESA, supra. Véase, Laboratorio Clínico Irizarry v. Departamento de Salud, res. el 3 de agosto de 2017, 2017 TSPR 145; Lacourt Martínez v. Junta de Libertad Bajo Palabra, res. el 3 de agosto de 2017, 2017 TSPR 144. Además, y ejerciendo la mencionada jurisdicción concurrente, hemos permitido que se ventilen casos en los cuales se intentó paralizar los mismos en virtud de PROMESA, supra. Véase, Laboratorio Clínico Irizarry v. Departamento de Salud, supra; Lacourt Martínez v. Junta de Libertad Bajo Palabra, supra; Universal Insurance Company v. ELA, Sentencia del 14 de marzo de 2018 AC-2017-0064, (donde en un caso sobre impugnación de confiscación este Tribunal optó por declarar **no ha lugar** una moción de paralización al amparo del Título III de PROMESA presentada por el Estado).

Sin embargo, hoy una Mayoría de este Tribunal opta por considerar que el presente litigio está paralizado y que cualquier alegación para levantarla debe ser hecha ante el Tribunal de Quiebra. Ello, bajo el razonamiento errado de que ese tribunal ostenta jurisdicción exclusiva para otorgar el referido remedio.

Como señalé, la paralización en cuestión surge, ya que PROMESA, supra, incorpora en su Título III la sección 362 del Código de Quiebras. Véase, 48 USC 2161 y 11 USC 362.

Por tanto, resulta imperativo examinar la jurisprudencia interpretativa de la referida sección del Código de Quiebras. Ante ese cuadro, el carácter colonial de nuestra relación con los Estados Unidos, no puede conducirnos a validar que los estudiantes de educación especial, confronten un marco de desigualdad adicional y no puedan beneficiarse de la jurisprudencia interpretativa del Código de Quiebras que los foros judiciales locales y federales han aplicado concurrentemente. Máxime, cuando el propio Congreso incorporó a PROMESA el andamiaje que examinaremos a continuación. Adelantamos que todos los foros bajo la bandera de los Estados Unidos tienen la facultad concurrente y la obligación de cumplir con el mandato legislativo de aplicar las excepciones contempladas bajo legislación federal que rigen los procesos de quiebras. Veamos.

**III**

En *In re* Gruntz, 166 F.3d 1020 (9th Cir. 1999), el Tribunal de Apelaciones para el Noveno Circuito determinó que los tribunales estatales carecían de jurisdicción para hacer una determinación de si el litigio ante su consideración estaba paralizado. El tribunal llegó a la mencionada conclusión al determinar que los tribunales de quiebra poseen jurisdicción exclusiva sobre los casos de quiebra y, como la paralización de los demás litigios emana de esos casos, son estos tribunales los encargados de levantar la misma. R.J. Haines, Ninth Circuit Divests State

Courts Jurisdiction to Construe and Apply the Automatic Stay, No. 4 Norton Bankr. L. Adviser 1 (1999). Sin embargo, esa decisión fue altamente criticada y, en específico, se ha dispuesto que la misma "ignores both history and the applicable jurisdictional statute, conflicts with Supreme Court precedent, and threatens significant disruption of state court proceedings". Íd. Asimismo, se ha mencionado que la decisión en *In re* Gruntz, supra, convenientemente ignoró lo dispuesto en el 28 USC sec. 1334(b), en lo referente a que la jurisdicción de los tribunales de quiebra es original, mas no exclusiva, en los procedimientos civiles colaterales que surjan de un caso de quiebras. R. J. Haines, supra. De acuerdo con lo anterior, se ha indicado que los tribunales de quiebra poseen jurisdicción exclusiva para atender el procedimiento de quiebra en su totalidad, pero no mantienen la referida exclusividad en asuntos colaterales, los cuales versan sobre asuntos externos al caso de quiebra per se. Es decir, queda claro que el procedimiento de quiebra es un asunto de entera exclusividad de esos foros. Ahora bien, los asuntos colaterales de ese caso, como lo es la determinación de si otro caso que involucra al deudor está paralizado en virtud del proceso de quiebra, no es un asunto de la entera jurisdicción de los tribunales de quiebra. Por consiguiente, los tribunales estatales están facultados para dirimir esos asuntos. Íd.

Luego de un año de la precitada decisión, y tras recibir fuertes críticas, el mismo foro reconsideró su dictamen. En su reconsideración, el Tribunal de Apelaciones para el Noveno Circuito determinó que los tribunales estatales pueden determinar si los casos ante su consideración están sujetos a la paralización automática o si, por el contrario, están exentos de la misma. *In re* Gruntz, 202 F.3d 1074,1087 (9th Cir. 2000) (en banc review). Claro está, la determinación de estos puede ser revisada por los tribunales de quiebra y, de ser encontrada errónea, los procedimientos llevados a cabo en violación de la paralización serían *ultra vires* y, por ende, nulos. Véase, J.J. Hargrove, Relief from Stay Compendium for State Court Judges, 27 Cal Bankr. J. 30, 30-31 (2003). No obstante, el mero hecho de que un tribunal distinto al de quiebra emita un dictamen sobre la aplicabilidad de las excepciones de la paralización automática no equivale a que el mismo sea nulo ab initio. Así pues, es deber de los otros foros judiciales determinar con suma cautela si los casos ventilados ante ellos están sujetos o no a la paralización de litigios en virtud de un procedimiento de quiebra, puesto que, de actuar contrario a derecho, sus actuaciones serían nulas. Íd., pág. 31. En otras palabras, sí estamos facultados, sin necesitar previa autorización de los tribunales de quiebra, para determinar si un caso ante nuestra consideración está sujeto a alguna de las excepciones de la paralización automática, según

dispuesto en el Código de Quiebras. Íd. ("When an exception to the stay is implicated, a 'state trial court need not seek approval.' Apparently state courts have jurisdiction to determine whether an exception to the automatic stay applies. However, any such findings are subject to review by the bankruptcy court. Therefore, parties who proceed are at risk that actions taken in the state court may later be declared void . . .".). Véase, además, R.J. French, The Automatic Stay in Bankruptcy and Contempt Proceedings, 50-Feb. Advocate (Idaho) 15, 15 (2007).

A esos efectos, el principio de derecho antes expuesto cuenta con más de diez años de trayectoria e implementación. Véase, Janis v. Janis, 179 Misc.2d 199, 201-202 (1998) ("*[T]he Court observes that under the Bankruptcy Code, the court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more* precise question whether the proceeding pending before it is subject to the automatic stay. This is a principle of law . . . supported for more than ten years". (comillas y citación omitida)). En ese sentido, la jurisprudencia muestra una clara tendencia de los tribunales de implantar el principio antes delineado. Véase, Chang v. Buffington, 125 Hawai'i 186 (2011); State v. McWilliams, 341 Mont. 517 (2008); Lockyer v. Mirant Corp., 388 F.3d (9th Cir. 2005); Commonwealth of Pennsylvania Dept. of Environmental Resources v. Ingram,

658 A.2d 435 (1995); <u>Matter of State of New York v. DeFranco Ford, Inc.</u>, 202 A.D.2d 592 (1994); <u>Citizens First National Bank of New Jersey v. Marcus</u>, 600 A.2d 943 (1991); <u>Westlund v. State, Dept. of Licensing</u>, 778 P.2d 40 (1989); <u>Brock v. Morysville Body Works, Inc.</u>, 829 F.2d 383 (3rd Cir. 1987); <u>Hunt v. Bankers Trust Co.</u>, 799 F.2d 1060 (5th Cir. 1986); <u>N.L.R.B. v. Edward Cooper Painting, Inc.</u>, 804 F.2d 934 (6th Cir. 1986); *In re* Baldwin-United Corp. Litigation, 765 F.2d 343 (2nd 1985). <u>Véase, además</u>, S. W. Sather, <u>Resolving Conflicts Between Bankruptcy and Administrative Law</u>, 11 Tex. Tech. Admin. L.J. 267, 296-298 (2010).

## IV

Una vez comprobado que tenemos jurisdicción concurrente, procede actuar proactivamente y decretar la excepción aplicable, conforme a derecho. Veamos.

La sección 362 del Código de Quiebras, 11 USC sec. 362, incorporada expresamente por PROMESA, <u>supra</u>, establece una paralización automática en los litigios contra el deudor. Ahora bien, PROMESA contiene una excepción expresa a la referida paralización:

> Except as otherwise provided in this Act, nothing in this Act shall be construed as impairing or in any manner relieving a territorial government, or any territorial instrumentality thereof, from compliance with Federal laws or requirements or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory. 48 USC 2106.

Ciertamente, el caso ante nos versa sobre una reclamación de honorarios, a tenor con la IDEA, por lo cual estamos ante una reclamación que se fundamenta en una ley federal. Así, de lo anterior surge que, bajo el esquema establecido por PROMESA, supra, el Estado no está liberado de cumplir con sus obligaciones, según establecidas por leyes federales que versen sobre salud, seguridad y asuntos ambientales. Por ende, y dado que la IDEA es una ley que versa sobre asuntos de salud, queda claro que el Título III y la paralización automática no puede servir como subterfugio para fines de que el Estado incumpla con sus obligaciones impuestas por una ley federal. Si el legislador hubiera querido que otro fuera el resultado, hubiese consignado expresamente en PROMESA, supra, que las reclamaciones como la presente estaban sujetas a la paralización automática, a pesar de que esas surjan a la luz de una ley federal que verse sobre salud, seguridad y asuntos ambientales. Por las razones mencionadas, el presente litigio, en efecto, no está sujeto a la paralización en cuestión. Veáse, Voto particular disidente del Juez Asociado Señor Colón Pérez en Vera González por sí y en representación del menor J.X.V.L. v. Estado Libre Asociado de Puerto Rico, et al., res. el 19 de marzo de 2018, 2018 TSPR __; Memorandum Order Granting Urgent Motion for Relief from the Automatic Stay Filed by Bernice

Beauchamp-Velázquez, Case No. 17 BK 3283-LTS, Docket Entry no. 1125.

**V**

A la luz de los fundamentos discutidos anteriormente, respetuosamente disiento y, en contrario, hubiera revocado al Tribunal de Apelaciones. Ello, dado que este Tribunal ostenta jurisdicción y la obligación de aplicar la excepción de la paralización en cuestión.


Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan Vera González

    Peticionario

       v.

Estado Libre Asociado de
Puerto Rico; Departamento
de Educación y Otros

    Recurridos

AC-2018-0020    *Certiorari*

Voto Particular Disidente emitido por el Juez Asociado señor COLÓN PÉREZ al que se unen la Jueza Presidenta ORONOZ RODRÍGUEZ, la Juez Asociada señora RODRÍGUEZ RODRÍGUEZ y el Juez Asociado señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 19 de marzo de 2018.

Por considerar que en un pleito instado al amparo de la ley federal *Individuals with Disabilities Education Act* (IDEA), *infra*, **no** es de aplicación la paralización automática que dispone el Título III de PROMESA, *infra*, disentimos del curso de acción seguido por una mayoría de este Tribunal en el día de hoy. Veamos.

I.

Allá para el mes de agosto de 2016, al amparo de la Ley federal IDEA, 20 USC sec. 1401 *et seq.,* el señor Juan Vera González y su esposa, la señora María de Lourdes López Báez (en adelante, "matrimonio Vera-López") presentaron una querella en contra del Departamento de Educación (en

adelante "Departamento") en beneficio de su hijo menor de edad JXVL, un participante del Programa de Educación Especial de la referida entidad gubernamental. En ella, alegaron que el Departamento no había podido brindar al referido menor los servicios educativos especializados necesarios para la condición de salud que padecía.

Así las cosas, y luego de varios trámites procesales no necesarios aquí pormenorizar, la Jueza Administrativa, designada por el Departamento para atender este asunto, declaró *ha lugar* la querella radicada por el matrimonio Vera-López y concedió los remedios solicitados. Dicha decisión fue oportunamente notificada a las partes.

Meses más tardes, en abril de 2017, para ser específicos, y al amparo también de la Ley IDEA, *supra*, el señor Vera González presentó una demanda en contra del Estado Libre Asociado de Puerto Rico (ELA), en la cual reclamó el pago de honorarios de abogados por los gastos incurridos en la tramitación de la mencionada querella ante el Departamento. Enterado de ello, el ELA presentó una moción ante el Tribunal de Primera Instancia en la cual alegó que el presente caso estaba paralizado como consecuencia de la presentación, por parte de la Junta de Supervisión y Administración Fiscal, de una petición de quiebra al amparo de la Ley PROMESA, *infra*.

Oportunamente, el señor Vera González se opuso a la solicitud del ELA. Argumentó que aquellas acciones derivadas de legislación federal estaban exentas de las disposiciones de la Ley PROMESA, *infra*. Ello, de conformidad con lo

dispuesto en las secciones 7 y 304 (h) del referido estatuto federal.

Evaluados los planteamientos de ambas partes, el Tribunal de Primera Instancia dictó *Sentencia*. Al así hacerlo, ordenó el archivo administrativo del caso ante nos.

Insatisfecho con dicho proceder, y tras presentar ante el foro primario una moción de reconsideración que le fue denegada, el señor Vera González acudió al Tribunal de Apelaciones. Allí, en esencia, nuevamente planteó que las reclamaciones que surgen de leyes federales están exentas de la paralización automática que dispone PROMESA, *supra*.

Examinados los alegatos de ambas partes, el foro apelativo intermedio notificó una sentencia mediante la cual confirmó el dictamen recurrido. Ello, tras concluir que la exención reclamada por el señor Vera González solo era aplicable a reclamaciones que involucraban fondos federales.

Todavía inconforme, el señor Vera González acude ante nos mediante el recurso que nos ocupa. En el mismo, en síntesis, alega que el Tribunal de Apelaciones erró al confirmar la paralización de los procedimientos pues, según dispuesto en las secciones 7 y 304 (h) PROMESA, *infra*, no procedía la paralización de los procedimientos relacionados a su reclamación de honorarios de abogado al amparo de la Ley IDEA.

Luego de un detenido y ponderado análisis de la controversia ante nuestra consideración, somos de la opinión que se cometió el error señalado. Nos explicamos.

II.

A.

Como es sabido, la *Individuals with Disabilities Education Act* (IDEA), *supra*, es un estatuto federal que tiene como propósito asegurar que los niños y niñas con necesidades especiales tengan acceso a una educación pública, adecuada y gratuita, que satisfaga sus necesidades particulares. 20 USC sec. 1400 (d). Con eso en mente, el legislador, al momento de aprobar la mencionada disposición legal, incluyó en la misma una causa de acción que permite a los padres, madres o encargados de estudiantes con necesidades especiales presentar una queja administrativa para reclamar asuntos relacionados a la identificación, evaluación o acomodo, o la provisión de una educación pública apropiada y gratuita para cada niño. *Íd.*, sec. 1415 (b)(6). Asimismo, entre otros remedios, el estatuto le concede a los padres y madres de estos estudiantes la facultad de solicitar honorarios de abogado razonables como consecuencia de una reclamación que haya surgido amparo de las disposiciones antes mencionadas. *Íd.*, sec. 1415 (i)(3).

Sobre las referidas disposiciones de la Ley IDEA, *supra*, este Tribunal se ha expresado en dos ocasiones. Así pues, en *Declet Ríos v. Dpto. de Educación*, 177 DPR 765 (2009), este Foro tuvo que determinar si un oficial examinador del Departamento de Educación tenía la facultad de imponer honorarios de abogado al ELA tras culminar un proceso

adjudicativo al amparo de la Ley IDEA, *supra*. En esa ocasión, este Tribunal resolvió dicha interrogante en la negativa. Ello, tras realizar un análisis de la disposición federal en controversia y concluir que ésta facultaba solamente a los tribunales -- estatales y federales -- para conceder el remedio dispuesto en la misma.

Por otro lado, en *Orraca López v. E.L.A.*, 192 DPR 31 (2014), este Tribunal tuvo la oportunidad de dilucidar cuál era el plazo prescriptivo aplicable a la reclamación de honorarios de abogado al amparo de la Ley IDEA, *supra*. Al no disponerse un término prescriptivo en la propia ley, el Tribunal debía dilucidar si procedía aplicar por analogía el término de treinta (30) días dispuesto por la Ley de Procedimiento Administrativo Uniforme (LPAU), 3 LPRA sec. 2172, para la revisión de determinaciones administrativas, o el término de tres (3) años establecido en el Art. 1867 del Código Civil de Puerto Rico, 31 LPRA sec. 5297, para reclamar el pago de honorarios de abogado. Allí, se resolvió que el término más análogo era el segundo. Ello, tras concluir que la reclamación de honorarios de abogado al amparo de la Ley IDEA, *supra*, no es una de naturaleza accesoria al procedimiento administrativo, sino que se trata de una causa de acción independiente al mismo.

Ahora bien, precisa señalar aquí que, si bien las dos opiniones reseñadas identifican la reclamación de honorarios de abogado en virtud de la Ley IDEA, *supra*, como una independiente del procedimiento administrativo y como tal

dicho reclamo debe hacerse en los tribunales, **ambas reconocen que la causa de acción (para el reclamo de honorarios de abogado) surge directamente de dicha ley federal**. *Véanse, Declet Ríos v. Dpto. de Educación*, *supra*; *Orraca López v. E.L.A.*, *supra*.

Es decir, para efectos procesales la reclamación de honorarios de abogado bajo la Ley IDEA, *supra*, es independiente de la reclamación del reembolso de gastos educativos, toda vez que la primera debe hacerse ante los tribunales y la segunda a través de un procedimiento administrativo. Sin embargo, sustantivamente hablando la reclamación de honorarios de abogado es parte del derecho concedido por la Ley IDEA, *supra*, a los padres y madres de estudiantes con necesidades especiales.

## B.

De otra parte, y por también considerarlo en extremo pertinente para la adecuada disposición de las controversias ante nuestra consideración, conviene recordar que el Congreso de Estados Unidos de América aprobó la *Puerto Rico Oversight, Management, and Economic Stability Act* (PROMESA), 48 USC sec. 2101 *et seq.*, con el propósito de establecer los contornos para la regulación de la deuda pública en Puerto Rico. Para adelantar tales propósitos, la referida disposición legal estableció el procedimiento que debe seguir el Estado Libre Asociado de Puerto Rico para presentar una petición de quiebra.

Sobre ese particular, la sec. 301 (a) del Título III de PROMESA, *supra*, incorporó a la referida disposición legal las secciones 362 y 922 del Título II del *Código de Quiebras de los Estados Unidos de América*, las cuales traen consigo la paralización automática de los pleitos que se ventilan contra un deudor al momento en que se radica la referida petición de quiebra; hecho que se consumó en nuestro país el pasado 3 de mayo de 2017, cuando la Junta de Supervisión y Administración Fiscal, en representación del Estado Libre Asociado de Puerto Rico, presentó ante la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico, una petición de quiebra al amparo de la Sec. 301(a) del Título III de PROMESA, *supra*.

La referida paralización automática es una de las protecciones más básicas que el legislador estadounidense instituyó en el Código de Quiebras para los deudores que se acogen a éste. *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 US 494, 503 (1986); *Soares v. Brockton Credit Union*, 107 F.3d 969, 975 (1er Cir. 1997). *Véase*, además, *In re Crespo Torres*, 532 B.R. 195 (2015). En lo que finaliza el pleito de quiebra, la misma impide, entre otras cosas, el comienzo o la continuación de cualquier proceso judicial, administrativo o de otra índole que fue o pudo haber sido interpuesto en contra del deudor, o para ejercitar cualquier acción cuyo derecho nació antes de que se iniciara la quiebra. 11 USC sec. 362; *Marrero Rosado v. Marrero Rosado*, 168 DPR 474, 490-491 (2006). *Véase*, además, *In re Coupel*, 556 B.R. 746 (2016).

Ahora bien, es norma reiterada que tanto los tribunales federales como los estatales tenemos la facultad inicial de interpretar la paralización y su aplicabilidad a los casos. *Rafael Lacourt Martínez v. Junta de Libertad Bajo Palabra*, 2017 TSPR 144, 198 DPR ___ (2017); *Laboratorio Clínico Irizarry v. Departamento de Salud,* 2017 TSPR 145, 198 DPR ___ (2017); *In re Mid-City Parking, Inc.*, 332 B.R. 798, 803 (N.D. III. Ill. 2005) (*Nonbankruptcy forums in both the state and federal systems have jurisdiction to at least initially determine whether pending litigation is stayed*). *Véanse,* además*, In re Lenke*, 249 B.R. 1 (10) (D. Az. 2000); *In re Singleton*, 230 B.R. 533, 538-539 (6th Cir. 1999). **Realizado dicho análisis, habrá escenarios en donde procederá la paralización automática, y habrá escenarios donde no procederá.**

Así las cosas, y en lo pertinente al caso que nos ocupa, es menester señalar que la Ley PROMESA, *supra*, establece en su sección 7 lo siguiente:

> Except as otherwise provided in this chapter, **nothing in this chapter shall be construed as impairing or in any manner relieving a territorial government, or any territorial instrumentality thereof, from compliance with Federal laws** or requirements or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory. (Énfasis suplido) 48 USC sec. 2106.

Además, en el contexto particular de una petición de quiebra, la sección 304 (h) de la referida ley dispone que:

> **This chapter may not be construed to permit the discharge of obligations arising under Federal**

> **police or regulatory laws, including laws relating to the environment, public health or safety,** or territorial laws implementing such Federal legal provisions. This includes compliance obligations, requirements under consent decrees or judicial orders, and obligations to pay associated administrative, civil, or other penalties. (Énfasis suplido) Sec. 304 (h), 48 USC sec. 2164.

Como se puede apreciar, de las precitadas disposiciones surge claramente que la Ley PROMESA, *supra*, no puede servir como fundamento para incumplir obligaciones gubernamentales que surjan de legislación federal. Por tal razón, las reclamaciones al amparo de leyes federales están exentas de la paralización por la presentación de una petición de quiebra en virtud de este estatuto.

Sobre este particular, cabe señalar que, **en un caso en extremo similar al que nos ocupa**, la Jueza Federal Laura Taylor Swain, quien atiende el procedimiento de quiebra instado por la Junta de Supervisión y Administración Fiscal en representación del ELA, permitió la continuación de cierto litigio para el pago de honorarios de abogado al amparo de la Ley IDEA, *supra*, no aplicando así la paralización dispuesta en el Titulo III de PROMESA, *supra*. *Véase*, *Memorandum Order Granting Urgent Motion for Relief from the Automatic Stay Filed by Bernice Beauchamp-Velázquez*, Case No. 17 BK 3283-LTS, Docket entry no. 1125.

Expuesta la normativa aplicable a la controversia ante nuestra consideración, procedemos a resolver.

III.

Como ha quedado claramente establecido, el señor Vera González presentó una demanda en contra del ELA para reclamar el pago de honorarios de abogado conforme lo dispone la Ley IDEA, *supra*. Ello, pues, tal causa de acción es parte de los remedios que brinda la mencionada disposición legal a los padres y madres de estudiantes participantes del Programa de Educación Especial que presenten una reclamación al amparo del referido estatuto. Al surgir la reclamación que nos ocupa de una ley federal, como ha quedado claramente demostrado en la normativa que antecede, la misma no está sujeta a la paralización automática que dispone el Título III de PROMESA, *supra*, por lo que procedía revocar la determinación del Tribunal de Apelaciones y ordenar la continuación de los procedimientos ante el Tribunal de Primera Instancia.[1] En ese

_____

[1] Aun cuando entendemos que lo contemplado en este Voto Particular Disidente es suficiente para disponer del presente caso, precisa aclarar aquí -- pues podría dar lugar a confusión -- que el término "discharge", según utilizado en la sección 304 (h) de PROMESA, supra, alude al mecanismo mediante el cual una deuda puede ser dispensada durante un procedimiento de quiebra. Esta dispensa, a su vez, opera como un injunction que impide, entre otras cosas, el comienzo o la continuación de cualquier reclamación monetaria por parte de un acreedor en contra del deudor. Véase 11 USC sec. 524(a) ("A discharge under this Section . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor."). A pesar de que esta dispensa es distinguible de la paralización automática -- en tanto y cuanto la dispensa también puede conllevar un relevo de la deuda -- en términos procesales, su efecto en este caso sería exactamente el mismo.

En el presente pleito, resulta evidente que la deuda en concepto de honorarios de abogados bajo la ley IDEA es una
(continúa...)

sentido, es forzoso concluir que el error señalado fue cometido.

No empece a lo anterior, y a pesar del texto claro de las disposiciones legales aquí discutidas, una mayoría de este Tribunal opta por confirmar la -- errada y, además, a nuestro juicio, injusta -- determinación del foro apelativo intermedio de mantener paralizado el presente pleito. De ese lamentable proceder, como ya mencionamos, disentimos.

IV.

Por los fundamentos antes expuestos, expediríamos el recurso de *certiorari*, revocaríamos la determinación del Tribunal de Apelaciones y devolveríamos el caso al foro primario para la continuación de los procedimientos.

Ángel Colón Pérez
Juez Asociado

---

que, conforme al texto claro de la ley PROMESA, no podrá ser objeto de dispensa en ningún momento durante la tramitación del procedimiento de quiebra. En atención a ello, y al estar en igual posición que un tribunal federal para determinar inicialmente la aplicabilidad y extensión de la paralización automática preceptuada en la ley PROMESA, supra, estimo improcedente hacer extensible la paralización automática a la causa de acción incoada por la peticionaria.

Y es que un análisis pragmático de las disposiciones legales atinentes justifica eximir de tal paralización el presente reclamo. Ello, puesto que el ELA nunca podrá ser relevado de satisfacer esta deuda y la paralización representaría un escollo más para una parte que ya prevaleció en su reclamo principal bajo la ley IDEA y pretende ser compensada por los gastos incurridos durante el trámite del mismo, derecho reconocido en el propio estatuto federal.